AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY,

       Plaintiff,

v.                       //   CIVIL ACTION NO. 1:14CV155
                                      LEAD CASE
                                (Judge Keeley)

TARA CLENDENEN, JAMES CLENDENEN,
MARY A. NEESE Administratrix and
Personal Representative of the Estate
of Skylar Neese, Deceased, DAVID
NEESE, and MARY A. NEESE, individually,

       Defendants.

and

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,

       Plaintiff,

v.                       //   CIVIL ACTION NO. 1:14CV172
                                (Judge Keeley)

MARY A. NEESE, Individually and as
Administratrix of the Estate of Skylar
Neese, DAVID NEESE, SHELIA EDDY,
RACHEL SHOAF, TARA CLENDENEN, and
PATRICIA SHOAF,

       Defendants.

## MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE

    Pending before the Court in this declaratory judgment action are several cross-motions for summary judgment. The plaintiffs, American National Property and Casualty Company ("American National") and Erie Insurance Property & Casualty ("Erie"), seek a

declaration that defendants Tara Clendenen ("Mrs. Clendenen") and Patricia Shoaf ("Mrs. Shoaf") are not insureds under their respective homeowner's policies, or that coverage is excluded. For their part, the defendants seek a declaration that Mrs. Clendenen and Mrs. Shoaf are entitled to a defense and indemnity under the homeowner's policies in an underlying state court action. During a status conference held on February 23, 2016, the Court ruled in favor of the defendants on the insurability question.

This Memorandum Opinion and Order addresses the following issues: (1) Whether Skylar Neese's death was an "occurrence" from the perspective of Mrs. Clendenen and Mrs. Shoaf; (2) whether Mrs. Shoaf and Rachel Shoaf are entitled to coverage under the personal injury portion of the Erie homeowner's policy; and, (3) whether either the severability clauses or the exclusions in the homeowner's policies are ambiguous. The Court intends to certify the exclusion and severability questions to the Supreme Court of Appeals of West Virginia ("the Supreme Court of Appeals") by separate order.

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

**FACTUAL BACKGROUND**[1]

In the spring and summer of 2012, teenagers Skylar Neese ("Skylar"), Shelia Eddy ("Eddy"), and Rachel Shoaf ("Shoaf") began to drift apart (Dkt. No. 1-5 at 6).[2] The girls had been close friends for a number of years, but Eddy and Shoaf wanted to terminate their friendship with Skylar. Id. Eddy and Shoaf were fearful, however, that Skylar would divulge sensitive, embarrassing information about them to others. Id.

On July 5, 2012, after finishing her shift at work, Skylar sneaked out of her home and met Eddy and Shoaf. Id. Driving Mrs. Clendenen's 2006 Toyota Camry, the girls traveled from West Virginia to a "rural, sparsely populated area" outside of Brave, Pennsylvania, where they parked, exited the vehicle, and began smoking marijuana. Id. at 6, 10.

When Skylar turned her back, Eddy and Shoaf armed themselves with kitchen knives that they had taped to their torsos. Id. at 7. Eddy and Shoaf then "violently and repeatedly" stabbed Skylar in the neck and back, killing her. Id. Skylar's body was not

---

[1] Unless otherwise noted, all citations refer to documents filed in the lead case, 1:14CV155.

[2] Mrs. Clendenen is Eddy's mother, and Mrs. Shoaf is Shoaf's mother.

discovered until January, 2013, more than six months after her disappearance. Id. at 8. Shoaf pleaded guilty to second degree murder, and was sentenced to thirty years in prison (Dkt. No. 1 at 3). Eddy pleaded guilty to first degree murder, and was sentenced to life in prison with mercy. Id.

On June 4, 2014, David and Mary Neese ("Mr. and Mrs. Neese"), Skylar's parents, filed suit both individually and on behalf of Skylar's estate in the Circuit Court of Monongalia County, West Virginia ("the state court complaint") (Dkt. No. 1-5 at 3). The Neeses sued Eddy and Shoaf, as well as Mrs. Clendenen and Mrs. Shoaf. Id. Their state court complaint alleged three counts. Id. at 7-9. In Count I, titled "Murder," the Neeses seek compensatory and punitive damages from Eddy and Shoaf. Id. at 7-8. In Count II, Negligence/Reckless Concealment, the Neeses seek damages from Eddy and Shoaf for their concealment of Skylar's body. Id. at 8-9. Finally, Count III, Negligent Supervision/Entrustment, alleges that Mrs. Clendenen and Mrs. Shoaf, as parents, guardians, and custodians of Eddy and Shoaf, "were negligent and careless in their supervision and guidance of their daughters . . . ." Id. at 9.

At the time of Skylar's murder, American National insured Mrs. Clendenen under an automobile policy and a homeowner's policy (Dkt.

No. 1 at 3).[3]  The American National automobile policy did not cover Eddy's 2006 Toyota Camry, which she drove on the night of the murder.  Based on the homeowner's policy, American National is currently defending Mrs. Clendenen in the state court case under a reservation of rights.  <u>Id.</u> at 4.

Similarly, Erie insured Mrs. Shoaf under an automobile policy and a homeowner's policy at the time of Skylar's murder (Case No. 1:14CV172, Dkt. No. 1 at 2).  It also provided an automobile policy to Mrs. Clendenen that covered the 2006 Toyota Camry.  <u>Id.</u> at 2, 13.  Erie denied a defense and indemnification to Shoaf, Eddy, Mrs. Clendenen, and Mrs. Shoaf under the automobile policies, but is currently defending Mrs. Shoaf under a reservation of rights pursuant to the homeowner's policy.  <u>Id.</u> at 4.

**PROCEDURAL HISTORY**

On September 12, 2014, American National filed suit in this Court, seeking a declaratory judgment that Mrs. Clendenen is not covered by the insurance policies, thereby obviating its duty to defend or indemnify (Dkt. No. 1 at 8).  On October 16, 2014, Erie filed suit, seeking a declaratory judgment that Shoaf, Eddy, Mrs.

---

[3] Under the American National policies, James Clendenen, who is Mrs. Clendenen's husband and Eddy's step-father, was the named insured (Dkt. No. 1 at 3).  The parties do not dispute that Mrs. Clendenen and Eddy were also insured under the policy.

MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE

Clendenen, and Mrs. Shoaf are not covered by the insurance policies, and therefore not entitled to a defense or indemnification (Case No. 1:14CV172, Dkt. No. 1 at 18). On December 3, 2014, the Court consolidated the two cases and designated 1:14CV155 as the lead case (Dkt. No. 24).

On March 9, 2015, American National moved for summary judgment, arguing that its automobile policy did not cover the vehicle used on the night of Skylar's murder (Dkt. No. 40 at 2-3). As to its homeowner's policy, it contends no coverage exists because there was no "occurrence" within the meaning of the policy and, even if there was an occurrence, the policy exclusions for intentional or criminal acts preclude coverage. Id. at 3.

Erie moved for summary judgment on March 9, 2015, arguing that Mrs. Shoaf is not covered under its homeowner's policy because Skylar's murder was not an "occurrence" (Dkt. No. 42 at 2). As does American National, Erie contends that, even if coverage exists, the claims in the state court case fall within the policy's criminal or intentional act exclusions. Id. As to the automobile policies, Erie alleges that no coverage exists because Skylar's murder did not arise out of the ownership, operation, maintenance, use, loading, or unloading of a covered vehicle. Id.

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

On April 8, 2015, the Neeses filed a combined cross-motion for partial summary judgment and opposition to American National and Erie's motions (Dkt. No. 45).[4]  They concede that Eddy and Shoaf are not entitled to insurance coverage under any policy, and that the automobile policies are inapplicable because Skylar's murder did not arise out of the use of a motor vehicle (Dkt. No. 46 at 3-4).  The Neeses, however, contend that Mrs. Clendenen and Mrs. Shoaf are entitled to coverage under the homeowner's policies for the following reasons:  (1) Skylar's death was an accident, and thus, an occurrence, from the viewpoint of Mrs. Clendenen and Mrs. Shoaf; and, (2) the criminal or intentional act exclusions in the homeowner's policies conflict with the severability clauses, thereby creating an ambiguity that must be resolved in favor of the defendants.  Id. at 8-10.

Mrs. Shoaf filed a combined cross-motion for summary judgment and response on April 13, 2015 (Dkt. No. 48).[5]  She admits that Erie owes her no coverage under her automobile policy, but contends that coverage exists under her homeowner's policy (Dkt. No. 49 at

---

[4] On April 13, 2015, the Clendenens joined the Neeses' cross-motion for summary judgment (Dkt. No. 47).

[5] Rachel Shoaf adopted Mrs. Shoaf's cross-motion and response (Dkt. Nos. 50, 53).

<u>**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**</u>

2).  Mrs. Shoaf argues that she does not fall within the exclusions in the policy, that the severability clause protects her from exclusion, and that Erie owes her coverage under the personal injury portion of her policy for various torts allegedly pleaded in the state court case.  <u>Id.</u> at 2-5.  American National and Erie filed their replies on May 1, 2015 (Dkt. Nos. 51, 52).

On February 23, 2016, the Court held a status conference in the case, during which it ruled that Skylar's death was an "occurrence" within the meaning of the American National and Erie policies.  This Memorandum Opinion and Order discusses the reasoning behind that ruling, as well as other matters.  By further order, the Court intends to certify to the Supreme Court of Appeals the case-dispositive question of whether the exclusions in both policies conflict with the severability provisions of these policies.

<u>**LEGAL STANDARD**</u>

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

## MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE

a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A).  When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party.  <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000).  The Court must avoid weighing the evidence or determining the truth, and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted).  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party.  <u>Id.</u> at 248–52.

<u>**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**</u>

<u>ANALYSIS</u>

As previously discussed, the parties have agreed that no coverage exists under the three automobile policies. Additionally, the Neeses and Clendenens concede that no coverage exists for either Eddy or Shoaf.[6] The Court therefore will address the following issues: (1) Was Skylar's death an "occurrence" from the perspective of Mrs. Clendenen and Mrs. Shoaf? (2) Are Mrs. Shoaf and Rachel Shoaf entitled to coverage under the personal injury portion of the Erie homeowner's policy? and, (3) Are either the severability clauses or the exclusions in the homeowner's policies ambiguous?

## I.   Insurability

American National and Erie contend that the state court complaint does not allege an "occurrence" that would trigger a duty to defend and indemnify Mrs. Clendenen or Mrs. Shoaf because Skylar's death was not an accident (Dkt. No. 41 at 21-22; Dkt. No. 43 at 15). The Neeses argue that the determination of whether an incident is an accident, and therefore an occurrence, must be made

---

[6] At the status conference, counsel for Mrs. Shoaf clarified that the Shoafs believe coverage exists for Mrs. Shoaf and Rachel Shoaf.

from the viewpoint of the insureds, Mrs. Clendenen and Mrs. Shoaf (Dkt. No. 46 at 16).

Mrs. Clendenen's American National homeowner's policy provides that an "occurrence" is defined as "an accident, including exposure to conditions," which results in either bodily injury or property damage during the policy period (Dkt. No. 1-3 at 8). "Repeated or continuous exposure to substantially the same general conditions is considered to be one occurrence." Id. Similarly, Mrs. Shoaf's Erie homeowner's policy defines an occurrence as "an accident, including continuous or repeated exposure to the same general harmful conditions" (Dkt. No. 49-2 at 6).

The term "accident" is not defined in either policy.[7] See Columbia Cas. Co. v. Westfield Ins. Co., 617 S.E.2d 797, 799 (W. Va. 2005) (giving the undefined term "accident" its normal meaning in light of all the relevant circumstances). When not defined in the policy, an accident generally means "an unusual, unexpected and unforeseen event," a "chance event or event arising from unknown causes." West Virginia Fire & Cas. Co. v. Stanley, 602 S.E. 2d

_____

[7] In this diversity action, state law controls the Court's construction of the insurance policy. See In re Nantahala Vill., Inc., 976 F.2d 876, 880-81 (W. Va. 1992).

483, 492 (W. Va. 2004)(internal citations and quotation marks omitted).

Importantly, when determining whether an occurrence was an accident, the Court must give "primary consideration, relevance, and weight" to the perspective or standpoint "of the insured whose coverage under the policy is at issue." Columbia Cas., 617 S.E.2d at 800-801. In Columbia Casualty, the Supreme Court of Appeals analyzed whether a county commission was entitled to coverage under its liability insurance policy after two inmates committed suicide. Id. at 798. The insurer declined to defend the commission, arguing that the inmates' deaths were not accidental, and therefore not occurrences as defined by the policy. Id. The Supreme Court of Appeals held that the inmates' suicides were accidental from the perspective of the insured commission, thereby making them "occurrences" within the meaning of the policy. Id. at 801.

Here, after examining the coverage question from the perspective of Mrs. Clendenen and Mrs. Shoaf, the Court concludes that Skylar's death was an occurrence within the meaning of the American National and Erie policies. Skylar's death indisputably was intended by Eddy and Shoaf. Yet, when taken from the Mrs. Clendenen and Mrs. Shoaf's perspectives, the facts in the state

court complaint suggest that Skylar's death was certainly unusual,
unexpected, and unforeseen. See Stanley, 602 S.E. 2d at 492.

The state court complaint alleges that Mrs. Clendenen and Mrs.
Shoaf were "negligent and careless in their supervision and
guidance of their daughters." (Dkt. No. 1-5 at 9). These
allegations include the following: (1) that Mrs. Clendenen and
Mrs. Shoaf failed to monitor their daughters' activities, behavior,
and whereabouts; (2) that they "negligently and unwittingly"
provided "the instruments, weapons, opportunities, and means"
necessary to harm Skylar; (3) that they negligently and recklessly
"allowed and condoned their daughters' use of marijuana"; and, (4)
that Mrs. Clendenen negligently allowed Eddy to use the 2006 Toyota
Camry on the night of the murder. Id. at 10. None of these facts
suggests that Mrs. Clendenen or Mrs. Shoaf intentionally or
knowingly assisted their daughters, or participated in Skylar's
murder in any way.[8]

---

[8] Such facts clearly would change the result here. See, e.g.,
Am. Modern Home Ins. Co. v. Corra, 671 S.E.2d 802, 806-07 (W. Va.
2008) (holding that a homeowner's policy did not provide coverage
when the homeowner knowingly permitted an underage adult – who was
subsequently involved in an automobile accident resulting in two
deaths – to consume alcoholic beverages on the homeowner's
property).

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

The cases cited by the plaintiffs do not compel the opposite conclusion. In <u>Smith v. Animal Urgent Care, Inc.</u>, 542 S.E.2d 827, 832 (W. Va. 2000), the Supreme Court of Appeals found no coverage for a veterinary business because one employee's sexual harassment of another was not accidental. There, the Supreme Court of Appeals focused on the relationship between Animal Urgent Care, the employer, and one of its veterinarians, who was accused of sexually harassing a fellow employee, before denying Animal Care coverage. <u>Id.</u> at 829, 832. In <u>Columbia Casualty</u>, however, which was decided after <u>Animal Urgent Care</u>, the Supreme Court of Appeals examined the accidental nature of the incident from the viewpoint of the insured whose coverage was at issue, the county commission charged with overseeing the jail. 617 S.E.2d at 801.

For all of the reasons discussed, when taken from the perspective of Mrs. Clendenen and Mrs. Shoaf, the Court **CONCLUDES** that Skylar's death was an occurrence within the meaning of the American National and Erie homeowner's policies.

## II. Personal Injury Torts

The Neeses and Clendenens concede that none of the policies provides liability insurance coverage for Eddy or Shoaf (Dkt. No.

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

45 at 3; Dkt. No. 47 at 2).[9]  Mrs. Shoaf, however, vigorously argues that coverage for herself and her daughter should exist for the "specific intentional acts" pleaded in the state court complaint under the personal injury liability coverage portion of the Erie homeowner's policy (Dkt. No. 49 at 18).  Shoaf has adopted that argument by reference (Dkt. No. 50 at 2).

According to Mrs. Shoaf, certain allegations in Count II of the state court complaint – which only names Eddy and Shoaf – "can be read" to state claims for libel, slander, defamation of character, invasion of privacy, and wrongful detention (Dkt. No. 49 at 19-21).  She contends that Count III, which alleges she negligently allowed her daughter to commit tortious acts, permits the Neeses to seek damages against her for the same intentional torts alleged against her daughter.  Id. at 21.

The Erie homeowner's policy provides coverage for personal injuries (Dkt. No. 49-2 at 15).  It defines "personal injury" as injury arising out of "libel, slander or defamation of character; false arrest, wrongful detention or imprisonment, malicious prosecution, racial or religious discrimination, wrongful entry or

---

[9] The Clendenens adopted by reference the Neeses' cross-motion and memorandum of law (Dkt. No. 47 at 2).  Eddy did not file a response or cross-motion.

eviction, invasion of privacy, or humiliation caused by any of these." <u>Id.</u> at 6.

In Count II of the state court complaint, which is labeled "Negligence/Reckless Concealment," the Neeses allege that Eddy and Shoaf "negligently and recklessly failed to disclose [Skylar's] whereabouts and provided false and misleading information regarding [Skylar's] disappearance . . ." (Dkt. No. 1-5 at 8).

According to Mrs. Shoaf, the allegation that Eddy and Shoaf provided false and misleading information "presumably relate[s] to numerous false reports . . . provided to investigators . . . ." (Dkt. No. 49 at 19). Those reports "presumably" include "suggestions . . . relating to Skylar Neese's character," which "would be consistent with libel, slander, or defamation of character, all of which are covered under the [Erie policy] . . . ." <u>Id.</u> at 20.

Similarly, Mrs. Shoaf contends the factual allegation that Eddy and Shoaf "provided false and misleading information" about Skylar's disappearance "can fairly be read to be providing publicity that 'unreasonably places another in a false light before the public,' in other words an invasion of privacy." <u>Id.</u> Finally, Mrs. Shoaf alleges that the contentions in the complaint regarding a plan to take Skylar to Pennsylvania for a purpose other than what

she intended raise a claim of wrongful detention or false imprisonment. Id. at 21.

Unsurprisingly, Erie argues that Mrs. Shoaf's attempt to find coverage under the personal injury liability portion of the homeowner's policy is "misguided" (Dkt. No. 52 at 20). It does not contest that the enumerated intentional torts are included within its policy's definition of personal injury. Id. Rather, Erie contends that "[e]ven a liberal reading of the complaint in the underlying action" compels the conclusion that Count II is a concealment claim, and not any of the torts mentioned by Mrs. Shoaf. Id. The Court agrees.

"[A]n insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986). The Court need not adjudicate the underlying facts to make this determination. See Stanley, 602 S.E.2d at 490. The insurer has a duty to defend the insured "only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." State Auto. Mut. Ins. Co. v. Alpha Eng'g Serv. Inc., 342 S.E.2d 876, 879 (W. Va. 2000). Although West Virginia is a notice pleading state

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

that requires complaints to be read liberally, "a plaintiff may not fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint . . . ." <u>State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.</u>, 461 S.E.2d 516, 522 (W. Va. 1995)(citing <u>Chaveriat v. Williams Pipe Line Co.</u>, 11 F.3d 1420, 1430 (7th Cir. 1993) (internal quotations omitted)).

After carefully comparing the state court complaint to Erie's homeowner's policy, the Court concludes that the allegations in the state court complaint are not "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy," as urged by Mrs. Shoaf. <u>Aetna</u>, 342 S.E.2d at 160. Simply put, the layers of "presumption" needed to transform Mrs. Shoaf's suppositions into meritorious claims belie her argument that Counts II and III of the state court complaint could impose liability for the types of intentional torts cited. The Court therefore **CONCLUDES** that no personal injury coverage exists under the Erie homeowner's policy for Rachel Shoaf or Mrs. Shoaf because the state court complaint does not contain any claims that fall within the definition of personal injuries. It further **CONCLUDES** that neither policy provides coverage for Rachel Shoaf

18

MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE

and Shelia Eddy, who are accused of committing intentional, criminal acts.[10]

### III. Ambiguity

The Neeses and the Clendenens argue that the confluence of the exclusionary and severability clauses in the homeowner's policies creates an ambiguity under West Virginia law (Dkt. No. 46 at 10; Dkt. No. 47 at 3). American National and Erie contend that their policy provisions unambiguously exclude coverage for intentional and criminal acts, notwithstanding the severability clause (Dkt. No. 41 at 14; Dkt. No. 43 at 16).

American National's homeowner's policy excludes coverage for bodily injury or property damage "which is expected or intended by any insured even if the actual injury or damage is different than expected or intended . . . ." (Dkt. No. 1-4 at 5).   It also unambiguously excludes any bodily injury or property damage "arising out of any criminal act committed by or at the direction of any insured . . . ."  Id. at 6.  The severability of insurance clause provides that "[t]his insurance applies separately to each insured."  Id. at 8.

_____

[10] As previously noted, the Clendenens and Neeses admit that no coverage exists under either policy for Eddy or Shoaf.

MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE

Similarly, Erie's policy excludes from coverage "[b]odily injury, property damage, or personal injury expected or intended by **anyone we protect** . . . ." (emphasis in original) (Dkt. No. 49-2 at 16).[11]  It also excludes "[p]ersonal injury arising out of willful violation of a law or ordinance by **anyone we protect**." (emphasis in original) (Dkt. No. 49-2 at 17).  The severability of insurance clause provides that "[t]his insurance applies separately to **anyone we protect**." (emphasis in original) (Dkt. No. 49-2 at 18).

When interpreting an insurance policy, the Court must give the policy language its plain, ordinary meaning.  <u>Stanley</u>, 602 S.E.2d at 489 (quoting Syl. Pt. 1, <u>Soliva v. Shand, Morahan & Co., Inc.</u>, 345 S.E.2d 33 (1986) (internal quotation marks omitted)).  When the policy language is clear and unambiguous, it is "not subject to judicial construction or interpretation." <u>Id.</u> (quoting Syl., <u>Keffer v. Prudential Ins. Co.</u>, 172 S.E.2d 714 (1970) (internal quotation marks omitted)).  Rather, the Court will give full effect to the plain meaning intended.  <u>Id.</u>  A policy provision is ambiguous if the language "is reasonably susceptible of two

---

[11] **Anyone we protect** is defined, in relevant part, as follows: "anyone we protect means you and the following members of your household:  1. relatives and wards; 2. other persons in the care of anyone we protect . . ." (Dkt. No. 49-2 at 5).

different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Id. (quoting Syl. Pt. 1, Prete v. Merch. Prop. Ins. Co., 223 S.E.2d 441 (1976) (internal quotation marks omitted)).

In West Virginia, ambiguous terms in insurance contracts are to be strictly construed against the insurer and in favor of the insured. Id. at 490 (quoting Syl. Pt. 4, Nat'l Mut. Ins. Co. v. McMahon & Sons, 356 S.E.2d 488 (1987), overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co., 504 S.E.2d 135 (1998) (internal quotation marks omitted)). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Am. States Ins. Co. v. Surbaugh, 745 S.E.2d 179, 186 (W. Va. 2013).

The Court, like the majority of courts to have considered this issue, finds that the exclusions in both homeowner's policies are unambiguous. See Chacon v. Am. Family Mut. Ins. Co., 788 P.2d 748, 751 (Colo. 1990) (finding the exclusion for intentional acts unambiguous). Similarly, the severability clauses are unambiguous. See EMCASCO Ins. Co. v. Diedrich, 394 F.3d 1091, 1097 (8th Cir. 2005) ("[T]he definition of an 'insured' and the intentional acts exclusion in the [homeowner's policy] is unambiguous. The

severability clause does not create any ambiguity"). Indeed, the parties do not contend that the exclusions and severability clauses are ambiguous when taken by themselves. Rather, they argue that ambiguity results when one applies the severability clause to the exclusions.

When the Court considers the language of both the exclusions and the severability clauses, it cannot fairly say that the result "is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Stanley, 602 S.E.2d at 489 (quoting Syl. Pt. 1, Prete, 223 S.E.2d at 441); see also Minkler v. Safeco Ins. Co. of Am., 232 P.3d 612, 625 (Cal. 2010) (recognizing the majority rule that a severability clause does not alter the "collective application of an exclusion"). That the parties disagree as to which of the two clauses should prevail does not render the policy ambiguous. See Surbaugh, 745 S.E.2d at 186.

Rather, the case-dispositive issue is which clause in the insurance policies should prevail over the other. See Keffer v. Prudential Ins. Co. of Am., 172 S.E.2d 714, 716 (W. Va. 1970) (explaining the general rule that the Court should not construe an unambiguous insurance policy). This question of public policy should not be decided in the first instance by this Court sitting

in diversity.  See Am. Ins. Co. v. South Carolina Ins. Co., 359 F.2d 432, 432 (4th Cir. 1966) (per curiam) ("Being a diversity action, state law controls and our decision will have limited precedential value.  Since the case is one of first impression, we refrain from writing a full opinion in deference to the state court which must establish the controlling law").

Given the Court's finding that the language of the policies is unambiguous, the heartland issues are as follows:  (1) Whether, under West Virginia public policy and the rules of contract construction, the exclusions in the policies should preclude Mrs. Clendenen and Mrs. Shoaf, who admittedly did not murder Skylar, from obtaining coverage based on the actions of their daughters, who were also insured under the policies; and, (2) whether the severability clauses in the policies require American National and Erie to apply the exclusions separately against each insured, based on that insured's own actions.  The Court intends to certify these questions to the Supreme Court of Appeals by separate order.

**MEMORANDUM OPINION AND ORDER FOLLOWING STATUS CONFERENCE**

<u>CONCLUSION</u>

Therefore, for the reasons stated, the Court **CONCLUDES** as follows:

1.  Skylar's death was an "occurrence" from the perspective of Mrs. Clendenen and Mrs. Shoaf;

2.  Neither Mrs. Shoaf nor Rachel Shoaf is entitled to coverage under the personal injury portion of the Erie homeowner's policy;

3.  Neither the severability clauses nor the exclusions in the homeowner's policies are ambiguous;

4.  Neither Eddy nor Shoaf is entitled to coverage under any of the insurance policies in the case; and,

5.  The defendants are not entitled to coverage under any of the automobile insurance policies.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 1, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE